Franklin J. Rooks Jr., Esq.
NJ Attorney ID: 023802010
Jared A. Jacobson, Esq.
NJ Attorney ID: 022002005
Jacobson & Rooks, LLC
525 Route 73 North
Suite 104
Marlton, NJ 08053
(856) 874-8999
(856) 494-1707*fax*                                Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **GEORGE GOODRITZ** | : No. | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **CASTAWAY COVE, LLC,** | : | |
| **S. & T. AMUSEMENT CO.** | : | |
| and | : | |
| **SCOTT SIMPSON** | : | **COMPLAINT** |
| | : | |
| Defendants | : | |

## PRELIMINARY STATEMENT

George Goodritz (the "Plaintiff"), by and through his counsel, brings this lawsuit against Castaway Cove, LLC, S. & T. Amusement Co., and Scott Simpson, seeking all available relief under the Americans with Disabilities Act and the New Jersey Law Against Discrimination for the failure to comply with the both Acts' accessibility requirements. Plaintiff is seeking injunctive relief requiring the Defendants to remove the accessibility barriers which exist at their parking facility. The allegations contained herein are based on personal experience of the Plaintiff.

## I.  JURISDICTION

1. This action is brought pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.

2. This civil controversy arises under the laws of the United States, and jurisdiction in conferred upon this District Court, pursuant to 28 U.S.C. §1331.

3. This Court has supplemental jurisdiction to entertain the State law causes of action under 28 U.S.C. § 1367(a).

## II.  VENUE

4. All actions complained of herein took place within the jurisdiction of the United States District Court for the District of New Jersey.

5. Venue is proper in this judicial District as provided by 28 U.S.C. §1391(b).

## III.  PARTIES

6. Plaintiff is a 69 year-old adult male who currently resides in Montgomery County, in the Commonwealth of Pennsylvania.

7. Plaintiff is a disabled individual.

8. Castaway Cove, LLC ("Defendant Castaway") is a limited liability company registered with the New Jersey Division of Revenue and Enterprise Services under entity identification number 0600127397.

9. S. & T. Amusement Co. ("Defendant S&T") is a for-profit corporation registered with the New Jersey Division of Revenue and Enterprise Services under entity identification number 8466730000.

10. Upon information and belief, Scott Simpson ("Defendant Simpson") is the owner and operator of Defendant Castaway and Defendant S&T.

11. Upon information and belief, Defendant Simpson is a New Jersey resident.

12. Defendant Castaway, Defendant S&T, and Defendant Simpson are collectively referred to herein as the "Defendants."

13. The Defendants are located at 1020 Boardwalk, Ocean City, New Jersey.

## IV. STATEMENT OF FACTS

*The Defendants' Parking Facility*

14. Defendant Castaway, and/or Defendant S&T, and/or Defendant Simpson owns an amusement park located on the boardwalk in Ocean City, New Jersey.

15. Upon information and belief, Defendant Castaway does business as "Playland's Castaway Cove."[1]

16. Defendant Castaway, and/or Defendant S&T, and/or Defendant Simpson also operate an adjoining public parking lot located at 10th Street and Ocean Avenue in Ocean City, New Jersey (the "Parking Facility").

17. The parking claim tickets for the Parking Facility are labeled, "Playland Parking." (**See Exhibit A**)

18. For a fee, an individual can park a vehicle in the Parking Facility at the prevailing market rates.

19. The Parking Facility has approximately thirty (30) parking spaces.

20. There are no parking spaces which contain any handicap-accessible access aisles for a car.

21. There are no parking spaces which contain any handicap-accessible access aisles for a van.

---

[1] https://oceancityfun.com/

22. None of the parking spaces have any handicap-accessibility signs designating the parking spaces as being handicap accessible.

23. The Parking Facility is staffed by a parking attendant who collects payment for parking and issues customers a receipt and claim ticket.

*The Plaintiff*

24. The Plaintiff is a disabled individual within the meaning of the ADA.

25. The Plaintiff has difficulty walking.

26. The Plaintiff possesses a handicapped parking placard issued by the Commonwealth of Pennsylvania.

27. The Plaintiff's handicapped parking placard permits him to park his vehicle in spaces designated as being handicap-accessible.

28. The Plaintiff takes his grandchildren to Ocean City and neighboring shore towns in the summer.

29. When in Ocean City, NJ, Plaintiff often is unable to find parking on the streets that are close to the boardwalk.

30. Plaintiff parks in a parking lot when on-street parking is not available.

31. The Plaintiff has previously patronized the Parking Facility.

32. The Plaintiff would patronize the Parking Facility in the future, but is currently deterred because of the lack of usable handicap-accessible parking places.

33. In May of 2017, the Defendants opened a new attraction at their amusement park.

34. The new attraction is a roller-coaster named, "Gale Force."[2]

35. Gale Force is not accessible to individuals with mobility impairments.

---

[2] http://www.pressofatlanticcity.com/business/ocean-city-playland-s-new-roller-coaster-to-open-after/article_b7bda74e-3b54-5f15-a963-f223e64e28ad.html

36. Gale Force is an attraction in which a customer can enjoy while in a seated position.

37. Customers must walk up approximately eight (8) steps to reach the entry point to embark upon the Gale Force.

38. Gale Force is not served by any ramps or elevators to allow individuals in wheelchairs to reach the entry point for this sit-down ride.

39. The Defendants provide restrooms for their patrons.

40. None of the restrooms are designated as being handicap accessible.

41. None of the restrooms have accessible door handles.

## THE NEW JERSEY LAW AGAINST DISCRIMINATION

42. The New Jersey Law Against Discrimination ("NJLAD") provides that "[a]ll persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation" without discrimination on the basis of disability. N.J.S.A. 10:5-4.

43. The NJLAD prohibits discrimination on the basis of a disability. N.J.S.A. 10:5-12(a).

44. Under the NJLAD, "'disability' means physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness including epilepsy and other seizure disorders, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or any mental, psychological or developmental disability, including autism spectrum disorders, resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental

functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques." N.J.S.A. 10:5-5(q)(a).

45. The New Jersey Administrative Code provides examples of reasonable accommodations, which include, "[p]roviding accessible entrances, walks and sidewalks, curb ramps and other interior or exterior pedestrian ramps, clear floor paths through lobbies, corridors, rooms, and other areas, parking access aisles, and accessible elevators and lifts." N.J.A.C. 13:13–4.12(a)(8).

46. Under the NJLAD, it shall be an unlawful discrimination for any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof. N.J.S.A. 10:5-12.

47. The NJLAD is intended to insure that handicapped persons will have 'full and equal access to society, limited only by physical limitations they cannot overcome'" Franek v. Tomahawk Lake Resort, 333 N.J. Super. 206, 217 (App. Div. 2000).

48. In interpreting the LAD in disability discrimination claims, "federal law has consistently been considered for guidance." Borngesser v. Jersey Shore Med. Ctr., 340 N.J. Super. 369, 380 (App. Div. 2001).

49. Under the NJLAD, damages are available for "[t]e personal hardships include: economic loss; time loss; physical and emotional stress; and in some cases severe emotional trauma, illness, homelessness or other irreparable harm resulting from the strain of employment controversies; relocation, search and moving difficulties; anxiety caused by lack of information, uncertainty, and resultant planning difficulty;

career, education, family and social disruption; and adjustment problems, which particularly impact on those protected by this act." N.J.S.A. 10:5-3.

## THE AMERICANS WITH DISABILITIES ACT

50. Congress enacted the Americans with Disabilities Act ("ADA") in 1990 with the purpose of providing "[a] clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "[c]lear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b).

51. The ADA provides a private right of action for injunctive relief to "any person who is being subject to discrimination on the basis of disability." 42 U.S.C. § 12188(a)(1).

52. Under the ADA, a disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

53. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.

54. "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from

a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

55. A "public accommodation" are private entities whose operations affect commerce. <u>See</u> 42 U.S.C. § 12181(7).

56. In relevant part, Title III requires that the facilities of a public accommodation be "readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable." 42 U.S.C. § 12183(a)(1).

57. Discrimination under the ADA includes the failure to remove architectural barriers where such removal is easily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

58. "Readily achievable" means easily accomplishable and able to be carried out without much difficulty or expense. 28 C.F.R. § 36.104.

59. Under Title III, places of public accommodation and commercial facilities that are newly constructed for occupancy beginning after January 26, 1992, must be "readily accessible to and usable by" individuals with disabilities. 28 C.F.R. § 36.401(a) (1).

60. "Facility" means all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located. 28 C.F.R. § 35.104.

61. Existing facilities whose construction predates January 26, 1992, must meet the lesser "barrier removal standard," which requires the removal of barriers wherever it is "easily accomplishable and able to be done without undue burden or expense." 28 C.F.R. § 36.304(a).

62. March 15, 2012 was the compliance date for using the 2010 ADA Standards for program accessibility and barrier removal.[3]

63. Discrimination, for purposes of a public accommodation, includes "[a] failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities" except where an entity can demonstrate that it is structurally impracticable to meet the requirements set forth by the ADA. 42 U.S.C. § 12183.

64. Under the ADA, businesses or privately-owned facilities that provide goods or services to the public have a continuing obligation to remove accessibility barriers in existing parking lots when it is readily achievable to do so.

65. The restriping/repainting of the parking space borders in relatively inexpensive, and should be readily achievable and easily accomplishable.

*Accessible Parking under the ADA*

66. The 1991 implementing rules and the 2010 revisions to the ADA set forth the following requirements for handicap-accessible parking spaces:[4]

| Total Number of Parking Spaces Provided in Parking Facility | Minimum Number of Required Accessible Parking Spaces |
|---|---|
| 1 to 25 | 1 |
| 26 to 50 | 2 |
| 51 to 75 | 3 |
| 76 to 100 | 4 |
| 101 to 150 | 5 |
| 151 to 200 | 6 |
| 201 to 300 | 7 |
| 301 to 400 | 8 |
| 401 to 500 | 9 |

[3] https://www.ada.gov/2010ADAstandards_index.htm
[4] https://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm#pgfId-1010282

| 501 to 1000 | 2% of the total number of parking spaces |
| More than 1001 | 20, plus 1 for each 100 parking spaces over 1000 |

67. The ADA requires that handicap-accessible parking spaces be at least 96 (ninety-six) inches wide. See Appendix A to Part 36- Standards for Accessible Design, 28 C.F.R. Part 36.[5]

68. The width of a parking space is measured from the center of each parking line bordering the parking space.[6] (**See Exhibit B**)

69. For cars, the ADA requires that there be an access isle for the handicap-accessible parking space that is at least 60-inches wide. (**See Exhibit B**)

70. For vans, the ADA requires that there be an access aisle for the handicap-accessible parking space that is at least 96-inches wide.[7]

71. The 1991 ADA regulations require that one in every eight accessible spaces must be van accessible.[8]

72. The 2010 ADA regulations state that one in every six accessible spaces must be van accessible.[9]

73. The path a person with a disability takes to enter and move through a facility is called an "accessible route."[10]

---

[5] https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/ada-standards/chapter-5-general-site-and-building-elements
[6] Id.
[7] https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/guide-to-the-ada-standards/chapter-5-parking#van
[8] https://www.ada.gov/regs2010/titleIII_2010/reg3_2010_appendix_b.htm
[9] Id.
[10] http://www.ada.gov/regs2010/titleII_2010/title_ii_primer.html

*Accessible Routes under the ADA*

74. Exterior accessible routes may include parking access aisles, curb ramps, crosswalks at vehicular ways, walks, ramps, and lifts.[11]

75. This route, which must be at least three feet wide, must remain accessible and not be blocked.[12]

76. In parking facilities that do not serve a particular building, accessible parking shall be located on the shortest accessible route of travel to an accessible pedestrian entrance of the parking facility.[13]

77. Accessible routes must connect parking spaces to accessible entrances.[14]

78. ADA accessibility standards require that accessible parking spaces in a parking garage be located on the shortest accessible route from adjacent parking to the accessible entrance of the building.[15]

79. ADA Guidance Standards provide that "[a] "path of travel" includes a continuous, unobstructed way of pedestrian passage by means of which the altered area may be approached, entered, and exited, and which connects the altered area with an exterior approach (including sidewalks, streets, and parking areas), an entrance to the facility, and other parts of the facility."[16]

80. "An accessible path of travel may consist of walks and sidewalks, curb ramps and other interior or exterior pedestrian ramps; clear floor paths through lobbies, corridors,

---

[11] https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/background/adaag#3. MISCELLANEOUS
[12] Id.
[13] https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/background/adaag#4.3
[14] https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/ada-standards/chapter-5-general-site-and-building-elements
[15] http://ada.gov/adata1.pdf
[16] https://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm#curbramps

rooms, and other improved areas; parking access aisles; elevators and lifts; or a combination of these elements."[17]

*Signage and the ADA*

81. The ADA standards require the use of the International Symbol of Accessibility ("ISA") to identify parking spaces which are reserved for use by individuals with disabilities.[18] (**See Exhibit C**)

82. Handicap-accessible parking spaces must be designed as "reserved" by a showing the ISA.

83. Directional signage must be used at inaccessible entrances to provide directions to the nearest accessible route.

84. Parking space identification signs shall be 60-inches minimum above the finish floor or ground surface measured to the bottom of the sign.[19]

*Amusement Rides and the ADA*

85. New rides refer to the "first use," which is the first time amusement park patrons take a ride on a custom designed or newly manufactured ride.  If a ride is moved to another area of a park or to another park, it is not considered new.  If the ride was purchased from another entity, "new" is the first permanent installation of the ride, whether it was purchased "off the shelf" or modified before installation.[20]

86. There are four types of rides that are not covered by the guidelines. However, other ADA requirements still apply. The four types are: i) Mobile or portable amusement

---

[17] Id.
[18] https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/background/adaag#4.1
[19] https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/ada-standards/chapter-5-general-site-and-building-elements
[20] https://www.access-board.gov/guidelines-and-standards/recreation-facilities/guides/guide-on-amusement-rides/accessible-amusement-rides.

rides such as those in traveling carnivals, State and county fairs, and festivals, do not need to comply. Mobile rides are available that provide wheelchair access and other rides could provide transfer access with minor modifications; ii) Rides that are controlled or operated by the rider (such as bumper cars and go-carts) are not required to comply with the guidelines, but an accessible route to the ride and a turning space (60-inch diameter circle or T-shaped turning space) in the load and unload area must be provided. (This exception does not apply if patrons can merely cause the ride to make incidental movements, but otherwise have no control over the ride.); iii) Rides designed for children, assisted on and off by an adult, are only required to provide an accessible route to the ride and a turning space in the load and unload area. While the occasional adult user may ride, the exception applies only to those rides that are designed for children; and iv) Rides that do not have seats must only provide an accessible route to the load and unload areas and a turning space in the load and unload area.[21]

87. Each newly constructed or newly designed amusement ride must provide at least one wheelchair space, or at least one ride seat designed for transfer, or a transfer device designed to transfer a person using a wheelchair from the load and unload area to a ride seat. The choice of which type of access that is provided for each ride is left up to the operator or designer.[22]

---

[21] https://www.access-board.gov/guidelines-and-standards/recreation-facilities/guides/guide-on-amusement-rides/accessible-amusement-rides
[22] Id.

88. Where possible, operators are encouraged to exceed the number of accessible ride seats so that more people with disabilities and their families can enjoy the rides at the same time.

89. Signage must be provided at the entrance of the queue or waiting line for each accessible amusement ride to identify the type of access provided on the ride (e.g., rides with wheelchair spaces or transfer rides). If the route to the accessible load area is different for persons with disabilities than for other riders, there must be signage indicating the location of the accessible load area so that riders can avoid unnecessary backtracking.[23]

90. For each accessible amusement ride, an accessible route is required to connect to a wheelchair space, a ride seat designed for transfer, or a transfer device for use with an amusement ride.

91. The accessible route must comply with ADAAG provisions for the location, width (minimum of 36 inches), passing space, head room, surface, slope (maximum of 1:12 or 8.33%), changes in level, doors, egress, and areas of rescue assistance, unless otherwise modified by specific provisions contained within the ADA guidance.[24]

---

[23] https://www.access-board.gov/guidelines-and-standards/recreation-facilities/guides/guide-on-amusement-rides/signage
[24] https://www.access-board.gov/guidelines-and-standards/recreation-facilities/guides/guide-on-amusement-rides/accessible-routes

*Other Accessible Requirements*

92. Doorways must provide maneuvering clearances to allow space for a disabled individual to open and proceed through doors, doorways, and gates using wheelchairs and other mobility aids. (**See Exhibit D**)

93. Doors are required to be handicap-accessible. Handles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. (**See Exhibit E**)

94. Restrooms must have adequate space for wheelchairs to make 180-degree turns. (**See Exhibit F**)

## COUNT I –

## FAILURE TO PROVIDE THE PROPER NUMBER OF HANDICAP-ACCESSIBLE PARKING SPACES

95. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

96. The United States Supreme Court recognized the term "major life activities" includes walking.  Bragdon v. Abbott, 524 U.S. 624, 638–39 (1998).

97. The Plaintiff is a disabled individual within the meaning of the ADA and NJLAD.

98. The major life activity that the constitutes the Plaintiff's disability is his difficulty walking distances.

99. Defendants failed to provide any parking spaces that were labeled as "handicap accessible" at the Parking Facility.

100. Defendants failed to provide any parking spaces which had a 60-inch wide adjacent access aisle.

101. Defendants failed to provide any handicap accessible parking spaces for vans with an accompanying 96-inch wide adjacent access aisle.

102. The Parking Facility's failure to provide more than handicap-accessible parking spaces has created an accessibility barrier for the Plaintiff, and other similarly situated disabled individuals.

103. Defendant Castaway and/or Defendant Simpson is responsible for ensuring the Parking Facility's compliance with the ADA and NJLAD.

104. The Defendants can remedy their non-compliance with the ADA's parking requirements by designating available non-handicap-accessible spaces as handicap-accessible space for a car.

105. The Defendants can remedy their non-compliance with the ADA's parking requirements by designating non-handicap-accessible spaces as handicap-accessible space for a van.

106. Compliance with the handicap parking space requirements at the Parking Facility is readily achievable.

107. The Defendants' failure to comply with the ADA has denied the Plaintiff the full and equal enjoyment of the parking offered by the Parking Facility.

108. The Defendants have discriminated against the Plaintiff by their failure to comply with the ADA.

109. The Defendants' failure to comply with the ADA and NJLAD has created a hardship for the Plaintiff.

WHEREFORE, Plaintiff, seeks to injunctive relief to require the Defendants to comply with the Americans with Disabilities Act and the New Jersey Law Against Discrimination, together with costs and mandatory attorneys' fees under as provided by both statutes, compensatory damages under the New Jersey Law Against Discrimination, and such other legal and equitable relief from Defendants as the Court deems just and proper.

## COUNT II -

## FAILURE TO COMPLY WITH THE SIGNAGE REQUIRMENTS FOR ACCESSIBLE PARKING

110. All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

111. The Parking Facility does not have any handicap-accessible parking signs.

112. The Parking Facility does not have any van-accessible handicap-accessible parking signs.

113. The Parking Facility does not have any marked accessible routes.

114. The Defendants can remedy their non-compliance by reallocating existing parking spaces and painting border lines which conform to the dimensional requirements of the ADA for handicap-accessible parking spaces and access aisles.

115. The Defendants' failure to comply with the ADA handicap-accessible parking requirements has denied the Plaintiff the full and equal enjoyment of parking offered by the Parking Facility.

116. The Defendants have discriminated against the Plaintiff by their failure to comply with the handicap-accessible parking requirements of the ADA and the NJLAD.

WHEREFORE, Plaintiff, seeks to injunctive relief to require the Defendants to comply with the Americans with Disabilities Act and the New Jersey Law Against Discrimination, together with costs and mandatory attorneys' fees under as provided by both statutes, compensatory damages under the New Jersey Law Against Discrimination, and such other legal and equitable relief from Defendants as the Court deems just and proper.

## COUNT III -

## FAILURE TO COMPLY WITH THE ACCESSIBILITY REQUIRMENTS FOR NEWLY CONSTRUCTED AMUSEMENT RIDES

117. All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

118. The Gale Force amusement ride is a newly constructed ride, constructed in 2016 and made ready for use in 2017.

119. The Gale Force amusement ride does not have any wheelchair ramps for customers who use wheelchairs.

120. The Gale Force amusement ride does not have an accessible route for customers who use wheelchairs.

121. The Gale Force amusement ride is not wheelchair accessible.

122. The Gale Force ride does not have any wheelchair spaces or any ride seats which allow a disabled patron to transfer from a wheelchair to the ride.

123. The Defendants have discriminated against wheelchair bound patrons by their failure to make the Gale Force amusement ride handicap accessible.

WHEREFORE, Plaintiff, seeks to injunctive relief to require the Defendants to comply with the Americans with Disabilities Act and the New Jersey Law Against Discrimination, together with costs and mandatory attorneys' fees under as provided by both statutes, compensatory damages under the New Jersey Law Against Discrimination, and such other legal and equitable relief from Defendants as the Court deems just and proper.

## COUNT IV -

## FAILURE TO COMPLY WITH THE ACCESSIBILITY REQUIRMENTS FOR RESTROOM FACILITIES

124. All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

125. None of the public restrooms are designated as being handicap accessible.

126. All of the doors to the public restrooms have round knobs.

127. None of the restroom doors are equipped with levers or other handicap-accessible opening devices.

128. None of the public restrooms have an unobstructed 30-inch by 48-inch clear floor space.

129. The Defendants have discriminated against the Plaintiff by their failure to comply with the handicap-accessible restroom requirements of the ADA and the NJLAD.

WHEREFORE, Plaintiff, seeks to injunctive relief to require the Defendants to comply with the Americans with Disabilities Act and the New Jersey Law Against Discrimination, together with costs and mandatory attorneys' fees under as provided by both statutes, compensatory damages under the New Jersey Law Against Discrimination, and such other legal and equitable relief from Defendants as the Court deems just and proper.

Respectfully submitted,

By: /s *Franklin J. Rooks Jr.*

Franklin J. Rooks Jr., Esq.
NJ Attorney ID: 023802010
Jared A. Jacobson, Esq.
NJ Attorney ID: 022002005
Jacobson & Rooks, LLC
525 Route 73 North
Suite 104
Marlton, NJ 08053
(856) 874-8999
(856) 494-1707*fax*
*Attorneys for Plaintiff, George Gooddritz*
Dated: July 6, 2017

## <u>CERTIFICATE OF SERVICE</u>

I, Franklin J. Rooks Jr., certify that I served Plaintiff's Complaint via the Court's ECF

system.


By: <u>/s</u> *Franklin J. Rooks Jr.*

Franklin J. Rooks Jr., Esq.
NJ Attorney ID: 023802010
Jared A. Jacobson, Esq.
NJ Attorney ID: 022002005
Jacobson & Rooks, LLC
525 Route 73 North
Suite 104
Marlton, NJ 08053
(856) 874-8999
(856) 494-1707*fax*
*Attorneys for Plaintiff, George Goodritz*
Dated: July 6, 2017

**EXHIBIT A**



## EXHIBIT B

(Source:https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/guide-to-the-ada-standards/chapter-5-parking#spaces)



**Access Aisle (§502.3)**
*An access aisle at least 60" wide and at least as long as the parking space is required on either side of the parking space and must be marked to discourage parking in it. Two spaces can share one aisle.  Access aisles cannot overlap vehicular ways.*

**Vehicle Spaces (§502.2)**
*Spaces must be marked to define the 96" minimum width.*

**full length of parking space**

**96" min     60" min     96" min**

**Surfaces (§502.4)**
*Parking spaces and access aisles must meet requirements for floor and ground surfaces (§302) and cannot have changes in level other than slopes not exceeding 1:48.*

**Markings (§502.1, §502.2, §502.3.3)**
*Both the parking space and access aisle must be marked.  The marking method and color is not specified in the Standards, but may be addressed by state or local codes or regulations. The width of spaces and aisles is measured to the centerline of markings (but it can include the full width of lines where there is no adjacent parking space or aisles).*

**EXHIBIT C**



# Figure 3B-22. International Symbol of Accessibility Parking Space Marking

Height of symbol:
Minimum = 28 inches
Special = 41 inches

Width of symbol:
Minimum = 24 inches
Special = 36 inches

★ Stroke width:
Minimum = 3 inches
Special = 4 inches

Note: Blue background and
white border are optional

**EXHIBIT D**

Source: https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/guide-to-the-ada-standards/chapter-4-entrances,-doors,-and-gates#ar2065

## Maneuvering Clearances [§404.2.4]

Required maneuvering clearances provide space for opening and proceeding through doors, doorways, and gates using wheelchairs and other mobility aids.



*Required door clearances provide unobstructed space for maneuvering through doorways.*



*Maneuvering clearances must be free of protrusions the full height (80" min.) and changes in level (other than thresholds).*

## EXHIBIT E

https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/guide-to-the-ada-standards/chapter-4-entrances,-doors,-and-gates#ar2065'

**Door and Gate Hardware [§404.2.7]**



Door and gate hardware must:

- allow one-hand operation
- not require tight grasping, pinching, or twisting of the wrist
- operate with 5 lbs  maximum force
- be located 34" to 48" above the floor or ground.

Hardware that can be operated with a loose grip or closed fist, such as lever-shaped handles and U-shaped pulls, accommodates the greatest range of users. (Closed-fist operation, while advisable, is not mandated by the Standards). Round door knobs do not comply because they require twisting of the wrist.

Latches and locks with small parts that must be manipulated can be difficult to use and will not comply if pinching is necessary. However, keys and access cards that are not part of the lockset are not required to comply (but those that do not require pinching or turning provide better access). Hardware that does not require simultaneous actions are better, but some types, such as handles with thumb latches are acceptable

## EXHIBIT F

Source: https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/guide-to-the-ada-standards/chapter-3-clear-floor-or-ground-space-and-turning-space

### Surface and Size [§305.2 and §305.3]

Clear floor spaces must meet requirements for ground and floor surfaces, including criteria for firmness, stability, and slip resistance. They must be free of level changes and not slope more than 1:48.

The minimum size (30" by 48") applies whether the space is positioned for forward or side approaches. Additional space is required when the space is confined on three sides and is obstructed for more than half the depth, such as when elements are recessed in alcoves.

### Approach and Maneuvering Clearance [§305.6 and §305.7]

Where the space is obstructed on both sides for more than half the depth, additional clearance is required for maneuvering. Accessible routes must connect to the unobstructed side of the space.



